PATRICK MALONE,           :      CIVIL ACTION

    Plaintiff,       :

v.                        :

JOHN WILLIAMS,            :

    Defendant.       :      NO. CV208-15

## O R D E R

Plaintiff, Patrick Malone, filed the above-captioned case against Defendant, asserting constitutional claims arising out of his arrest and incarceration, pursuant to 42 U.S.C. § 1983. Presently before the Court is Williams' motion for summary judgment. Because there was arguable probable cause for Malone's arrest, and Malone's other claims are unsupported by the facts, the motion will be **GRANTED**.[1]

**BACKGROUND**

---

[1] Defendant argues that he should prevail in this case by default, because Plaintiff did not file a complete brief in a timely fashion, although a full brief was filed a day after the deadline. Even if Plaintiff's electronic filing conduct was culpable (and the Court does not conclude that it was), the Federal Rules of Civil Procedure do not permit a trial court to grant summary judgment because a motion is unopposed. United States v. 5800 SW 74th Avenue, 363 F.3d 1099, 1101 (11th Cir. 2004); Fed. R. Civ. P. 56(e)(2). The Court will consider the merits of Defendant's motion, and Plaintiff's arguments in opposition.

AO 72A
(Rev. 8/82)

On January 11, 2006, Malone struck his pregnant, live-in girlfriend, Donna Sumrall, on the face. On January 14, 2006, Malone was arrested for hitting Sumrall. Thereafter, Malone was released under a bond that required Malone to "[h]ave no contact with victim(s) in person, by phone, using e-mail, third-party, or any other manner[,] or go about his/her residence or place of business unless approved by the Court or Supervising Officer." Dkt. No. 1, Ex. A ¶ 7.

According to Plaintiff, on January 23, 2006, he was battered by his new girlfriend, Lori Darling. Malone contends that Darling was high on drugs, and that she attacked him for no apparent reason. Thereafter, a neighbor suggested that Malone seek counseling at the Camden House, a domestic violence shelter located in St. Marys, Georgia, to assist in his relationship with Darling.

On February 4, 2006, Malone called the Camden House. According to Malone, he did not know that Sumrall was staying there at the time. Malone does not dispute that Sumrall did in fact reside at the Camden House after his arrest for assaulting her the previous month, and that she was staying there at the time he called. According to Malone, he asked the person who answered the phone whether the Camden House

provided counseling services to persons who are victims of family violence. In response, Plaintiff contends, the Camden House staffer suggested that he visit a homeless shelter, and asked for his name. It is undisputed that Malone did not give his name, and that he hung up the phone.

On the other hand, Defendant contends that he obtained materially different information as a result of a police interview with Tatyana Hickman, the shelter volunteer who claims to have spoken with Malone. Hickman told Williams that Malone sounded drunk, and that he was argumentative and used foul language during the call. Hickman further informed the officer that Malone had asked whether the Camden House would provide him with the same services that they were providing to Sumrall.

The parties agree that after the call terminated, a staffer at the Camden House told Sumrall that Malone had called the facility in an effort to ascertain her whereabouts, or in an attempt to speak with her. At that time, Sumrall or a Camden House staffer called 911. Williams, a police officer in St. Marys, Georgia, arrived on the scene in response to the 911 call. Sumrall repeated to Williams what the Camden House staff had told her about

3

Malone's call. Williams also saw caller-ID information on the Camden House phone, and observed that Malone's name was displayed as having contacted the Camden House. According to Williams, he believed that Sumrall feared for her safety as a result of the call. Dkt. No. 19-5, Williams Aff. ¶ 9.

On February 6, 2006, Williams sought and obtained a warrant for aggravated stalking against Malone. In support of the application, Williams attested that Malone attempted "to contact and harass call the Camden House and make contact with . . . Sumrall[,] which is in violation of a pre-existing TPO/Bond condition." Dkt. No. 1, Ex. C. Thereafter, Williams asked the Kingsland Police Department to take Malone into custody, because Malone resided in that neighboring town.

The Kingsland Police Department arrested Malone and took him to a Camden County Sheriff Department sub-station in Kingsland. Williams met Malone there, and informed Malone that he had been arrested for violating the terms of his bond, and charged with aggravated stalking. Thereafter, a sheriff's deputy took Malone to the Camden County Jail in Woodbine. The aggravated stalking charge was later dismissed.

4

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in his favor[,]" United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)(en banc)(internal quotation marks omitted).

## DISCUSSION

Plaintiff has not stated whether the claims raised in this lawsuit are asserted against Officer Williams in his official or individual capacity. Because Malone has made no averment that any policy or custom was the moving force

behind the violations, the Court concludes that the claims are made against Williams in his individual capacity only.

## I. Fifth Amendment Due Process Claim

Williams contends that Malone's Fifth Amendment due process claim fails as a matter of law because no federal officer was involved in the alleged deprivation. E.g., Knoetze v. United States, 634 F.2d 207, 211 (5th Cir. Jan. 1981).[2]

Malone does not submit that any Fifth Amendment claim would be viable under the facts involved in this case, but does maintain that his complaint was sufficient to invoke the due process protections of the Fourteenth Amendment, which allows such a claim against state actors.

The parties dispute whether the language of paragraph thirty of Plaintiff's complaint asserts a Fourteenth Amendment claim. In any event, Plaintiff would like to assert such a claim at this time, and has asked to amend his complaint, if necessary, to do so.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

6

Defendant notes that the deadline for amendment expired on June 9, 2008, and opposes Plaintiff's request as untimely. Dkt. No. 11. Defendant also points out that it is not clear what sort of due process claim Plaintiff wants to assert, procedural or substantive. Defendant further contends that the proper recourse in this case is under the Fourth Amendment, not the Fourteenth Amendment. Albright v. Oliver, 510 U.S. 266, 273-74 (1994). According to Williams, the Fourth Amendment provides the explicit and exclusive textual source for Malone's claims because his claims arise out of his arrest and detention.

The Court finds that Plaintiff's complaint does not raise a due process claim under the Fourteenth Amendment, and that the proposed amendment to state such a claim at this late date is without justification. See Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1966 (2007); Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 974 n.43 (11th Cir. 2008). Accordingly, the Court will grant Defendant judgment as a matter of law on Plaintiff's due process claim, and will deny Plaintiff's request for leave to amend.

## II. Fourteenth Amendment Equal Protection Claim

7

Defendant posits that Plaintiff's equal protection claim fails because Plaintiff has failed to identify any person similarly situated, and treated better than him based on their race or sex.

> The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination. This may appear on the face of the action taken with respect to a particular class or person . . . or it may only be shown by extrinsic evidence showing a discriminatory design to favor one individual or class over another not to be inferred from the action itself. . . . But a discriminatory purpose is not presumed, . . . there must be a showing of "clear and intentional discrimination[.]"

Snowden v. Hughes, 321 U.S. 1, 8 (1944)(internal citations omitted); E & T Realty v. Strickland, 830 F.2d 1107, 1112-13 n.5 (11th Cir. 1987).

Plaintiff responds that Defendant unequally administered a facially neutral statute, Georgia Code section 16-5-91, which prohibits aggravated stalking, against him based on his sex. Upon learning that Plaintiff, a male, had called the domestic violence shelter, Plaintiff asserts, Williams chose to interpret Malone's inquiry as aggravated stalking based

8

solely on his sex.[3]

Plaintiff's equal protection claim fails for a lack of evidence. Because the violation relates to a facially neutral statute, to prevail on this claim, Plaintiff must identify some evidence of intentional discrimination in its application. Malone has pointed to no evidence that Williams treated suspected female stalkers differently. Defendant is entitled to summary judgment as to the equal protection claim.

## III. Sixth Amendment Claim

Plaintiff complains that, when he was arrested by the Kingsland Police Department, no warrant for his arrest was presented, and he was not informed of the charges against him. Malone does concede that Williams told him why he had been arrested shortly after Williams arrived at the sub-station, but Plaintiff urges that he had a Sixth Amendment right to be informed of the charges against him at the time

---

[3] Although Malone also avers that staffers at the Camden House also discriminated against him based on his sex in this respect, the law does not afford him any relief against that entity or its agents. In Plaintiff's complaint he asserts that the Camden House is a private, nongovernmental institution. Dkt. No. 1 ¶ 8. The Fourteenth Amendment governs conduct by state actors, and the Camden House is not a defendant in this action.

9

of arrest.

The Court disagrees. Malone had no Sixth Amendment right to be informed of the reason for his arrest at the time of his arrest. "While it is assuredly good police practice to inform a person of the reason for his arrest at the time he is taken into custody, we have never held that to be constitutionally required." Devenpeck v. Alford, 160 L. Ed. 2d 537, 546 (2004); Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987); Williams v. Schario, 93 F.3d 527, 528-29 (8th Cir. 1996)(per curiam). Under the Sixth Amendment, the accused has the right to be informed of the accusation against him, but that right does not attach until the government decides to prosecute. Id.[4]

## IV. Fourth Amendment Claim

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

---

[4] As Defendant has stated, Federal Rule of Criminal Procedure 4 has no application here, because Plaintiff was not arrested by a federal law enforcement officer. See Fed. R. Crim. P. 1(a)(1).

10

457 U.S. 800, 818 (1982). In evaluating a qualified immunity defense, the Court must first determine if the plaintiff's rights were violated at all. Wilson v. Layne, 526 U.S. 603, 609 (1999). The Court need not proceed beyond that inquiry in this case.

Malone argues that Williams violated the Fourth Amendment to the United States Constitution by arresting him without probable cause. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing the offense.'" Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 160 L. Ed. 2d 537, 544 (2004).

The subjective intentions of an arresting officer "play

11

no role in ordinary, probable-cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 813 (1996). "Instead, an arrest will be upheld if the objective circumstances justify the arrest." United States v. Jones, 377 F.3d 1313, 1314 (11th Cir. 2004)(per curiam).

The Court's evaluation is guided by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175 (1949). Whether an officer's conduct is reasonable under the Fourth Amendment "should be judged from [the officer's] on-scene perspective," and not in the "20/20 vision of hindsight." Saucier v. Katz, 533 U.S. 194, 205 (2001).

"Only where the warrant application is so lacking in probable cause as to render official belief in its existence unreasonable . . . , will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344-45 (1986). "Applying the standard in the context of an allegation of unlawful arrest, the question is whether 'a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.'" Garmon v. Lumpkin

12

County, 878 F.2d 1406, 1410 (11th Cir. 1989) (quoting Malley, 475 U.S. at 345).

In other words, qualified immunity applies when there is arguable probable cause for an arrest. If under all the facts known to the officer at the time of the arrest, a reasonable officer could have believed that probable cause was present, arguable probable cause exists. Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003).

Malone's bond required that he "[h]ave no contact with victim(s) in person, by phone, using e-mail, third-party, or any other manner or go about his/her residence or place of business unless approved by the Court or Supervising Officer." Dkt. No. 1, Ex. A ¶ 7.

Relevant to the facts here, Georgia law provides that:

> A person commits the offense of aggravated stalking when such person, in violation of a bond . . . in effect prohibiting the behavior described in this subsection, follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Ga. Code Ann. § 16-5-91.

> [T]he term "place or places" shall include any public or private property occupied by the victim other than the residence of the defendant. . . . [T]he term "harassing and intimidating" means a knowing and willful course of conduct directed at

13

a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose. This Code section shall not be construed to require that an overt threat of death or bodily injury has been made.

Ga. Code Ann. § 16-5-90(a).

"The applicable essential elements of aggravated stalking are: (1) violation of a bond posted pursuant to O.C.G.A. § 17-6-110, (2) which prohibits following, placing under surveillance, or contacting another person, (3) without the consent of that person, and (4) for the purpose of harassing and intimidating that person." Jagat v. State, 240 Ga. App. 822, 823 (1999).

In support of the warrant application, Williams attested that Malone attempted "to contact and harass call the Camden House and make contact with . . . Sumrall[,] which is in violation of a pre-existing TPO/Bond condition." Dkt. No. 1, Ex. C. The warrant was issued after Camden County Magistrate Harvey L. Fry determined that probable cause existed to arrest Plaintiff for aggravated stalking. Id.

As Plaintiff himself has conceded, an attempted stalking charge was upheld in State v. Rooks, 266 Ga. 528, 528-30

14

(1996). In <u>Rooks</u>, the criminal defendant made a number of calls to his ex-wife's place of employment, asking for her and speaking with her colleagues during her day-long absence. Like Malone, Rooks made the calls without identifying himself. The <u>Rooks</u> court explained that "[i]t is neither absurd nor impractical to subject to criminal sanction such actions when they are done with the requisite specific intent to cause emotional distress by inducing a reasonable fear of death or bodily injury." <u>Id.</u> at 529.

Under Georgia law, "[a] person commits the offense of criminal attempt when, with intent to commit a specific crime, he performs any act which constitutes a substantial step toward the commission of that crime." Ga. Code Ann. § 16-4-1. In addition, "[a] person charged with commission of a crime may be convicted of the offense of criminal attempt as to that crime <u>without</u> being specifically charged with the criminal attempt in the accusation, indictment, or presentment." Ga. Code Ann. § 16-4-3 (emphasis added).

One convicted of criminal attempt to commit a felony is subject to imprisonment of not less than a year, and not more than one-half the maximum sentence, had the attempt been successful. Ga. Code Ann. § 16-4-6(b). The crime of

15

aggravated stalking is punishable as a felony. Ga. Code Ann. § 16-5-91(b).

Malone underscores the fact that, in the instant case, there was one phone call only, but he offers no support for his argument that the first alleged attempt to violate the condition of his bond is condoned by the law or outside the bounds of punishment under the statute. The Court is not persuaded by Malone's argument that the "first call is free" for an alleged stalker.

Also, Malone complains that Williams' only reference to Hickman, who claimed that Malone had mentioned his ex-girlfriend's name, came at Williams' deposition, where it constituted hearsay. However, there is no requirement that the government prove its case beyond a reasonable doubt or disclose every witness in a warrant or warrant application. Moreover, it is plain that the bond sheet attached to the warrant disclosed Hickman's identity as a witness for the State. Dkt. No. 1, Ex. C at 2.

Williams insists that he reasonably believed that Malone violated the terms of his bond order, and was guilty of aggravated stalking. Williams spoke with three witnesses, and gathered corroborating evidence on the caller-ID system

16

that indicated that Malone had called the Camden House. Additionally, Williams knew that Sumrall had been informed that Malone had tried to contact her, and that she expressed fear for her safety as a result. Williams also knew that Malone was barred from contacting Sumrall by the terms of his bond. Williams had reason to believe Malone sought the same services as Malone's named ex-girlfriend, Sumrall.

A reasonable officer in Williams' position could have concluded that Malone expected the third party, Hickman, to tell Sumrall that Malone had called in an effort to ascertain her whereabouts -- or to let her know that he knew that she was living there. Based on the totality of the circumstances, Williams had enough information to conclude that there was probable cause to believe that Malone had attempted to contact Sumrall and violate the terms of his bond and Georgia law. See Ga. Code Ann. § 16-5-91(b); Ga. Code Ann. § 16-4-1.

> "[When] the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing" (emphasis in original). This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge

17

that sometimes must be garnered hastily. But
surely it is to be "truthful" in the sense that
the information put forth is believed or
appropriately accepted by the affiant as true.

Franks v. Delaware, 438 U.S. 154, 164-65 (1978)(quoting United States v. Halsey, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)).

The Franks rule applies to affidavits offered by the police in support of arrest warrants. Yet, "the rule does not apply to negligent misrepresentations or omissions" made by an officer. Kelly v. Curtis, 21 F.3d 1544, 1554 (11th Cir. 1994). "The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant." Franks, 438 U.S. at 171.

In sum, there was nothing improper about Williams relying on hearsay from Hickman about the contents of her phone conversation with Malone, and any negligent misrepresentation by Williams in the warrant is not actionable under § 1983. Rather, there was arguable probable cause for the arrest because, at the time of arrest, Williams had reason to believe that Malone had mentioned Sumrall's name when he called the domestic violence shelter. Under Georgia law, this provided the officer with sufficient cause

to believe that Malone violated his bond and state law by attempting to contact his domestic violence victim. Rooks, 266 Ga. at 529; Ga. Code Ann. § 16-5-91 (b); Ga. Code Ann. § 16-4-1; Dkt. No. 1, Ex. A ¶ 7.

The fact that a suspect was later acquitted of the crime, or that the charges were later dropped, does not affect the validity of the earlier arrest. In other words, government officials do not violate § 1983 every time an arrest does not result in a conviction. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979); United States v. Lyons, 403 F.3d 1248, 1254 (11th Cir. 2005).

## CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment is **GRANTED**. Dkt. No. 19.

**SO ORDERED**, this  29th  day of January, 2009.

_____
JUDGE, UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA